THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No: 16-15566 (PMC) |
| | ) | |
| Dennis Martin Woodworth | ) | Chapter 7 |
| Victoria Lee Woodworth, | ) | |
| | ) | |
| Debtors | ) | JUDGE PAT E. MORGENSTERN-CLARREN |

**Motion of the United States Trustee to Dismiss for Abuse Pursuant to
11 U.S.C. §§ 707(b)(1), (b)(2) & (b)(3)**

The United States trustee for Region 9, Daniel M. McDermott, moves this Court for an order dismissing this case pursuant to 11 U.S.C. §§ 707(b)(1), (b)(2) and (b)(3). The presumption of abuse arises in Debtors' case. Debtors have the ability to repay creditors and should make an attempt to do so. In support, the United States trustee states:

### *Standing*

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b); 28 U.S.C. §§ 157(a) and (b)(1); and 28 U.S.C. § 151. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B). The United States trustee has standing to file this motion pursuant to 11 U.S.C. § 307, 11 U. S. C. § 707(b) and 28 U.S.C. § 586(a)(5).

### *Summary*

The presumption of abuse arises in Debtors' case and there are no known special circumstances such as a serious medical condition or call to active duty. Debtors' household income exceeds the median income for their household size and geographical location and they have the ability to repay creditors as it appears that income is understated and expenses are overstated. Debtors are surrendering the personal residence but claim a deduction for the mortgage on both their means test and schedule of monthly expenses.

*Factual Background*

1. On October 7, 2016, Dennis Martin Woodworth & Victoria Lee Woodworth (Debtors) filed a voluntary chapter 7 petition for relief. Debtors' bankruptcy petition identifies their debts as primarily consumer debts.

2. Mr. Woodward is a store training manager for Truenorth where he has been employed for 7 years and earns a base salary of $3,229 and also receives quarterly commissions. Mrs. Woodworth is a sales associate for JCPenney where she has been employed 18 years and earns $2,463 a month.

3. Debtors do not have any dependent children.

**Debtors' Means Test**

4. Debtors' Form 22A-1 Statement of Your Current Monthly Income ("CMI") shows current monthly income of $6,643 and annualized gross income of $79,725. Debtors' claim a household size of two. In Ohio, the median income for a household size of two is $55,771. Because Debtors' computation of annualized income is more than the Ohio median family income figure for a household size of two, they completed Form 22A-2 Means Test Calculation ("Means Test"). Debtors' Means Test shows monthly disposable income of $133. Debtors' Means Test contains errors.

5. Line 9 of the Means Test should be changed only to reflect the standard mortgage allowance because Debtors are surrendering their residence secured by the mortgage, have not made a payment in approximately four months and testified at the 341 meeting of creditors of their intent to remain in the house as long as possible without paying the mortgage. *See In re Darrohn*, 615 F.3d 470, 476 -77 (6th Cir. 2010) (citing and relying on the Supreme Court's decision in *In re Lanning,* 560 U.S. 505 (2010), and determining that a debtor cannot deduct mortgage payments for property that will be surrendered in calculating projected disposable

income on a chapter 13 means test). *See also, In re Fredman, 471 B.R. 540 (Bankr. S.D. Ill. 2012); In re White, 512 B.R. 822 (N.D. Miss. 2014), In re Powers, 534 B.R. 207 (N.D. Fla. 2015)*, which are cases decided after *Lanning* and *Darrohn* applying the Supreme Court's holding to chapter 7 means tests.

6. Line 22 of the Means Test should be reduced from $142 to zero and Line 25 of the Means Test should be increased from $134 to $453. These lines deal with additional health care expenses, medical insurance and contributions to health savings accounts. Debtors are contributing $327 a month to a health savings account and that amount should be listed on Line 25 of the Means Test. Since Debtors' out-of-pocket health expenses of $250 are covered by the $327 monthly contribution to a health savings account, there should not be an additional entry on Line 22 of the Means Test.

7. Line 23 of the Means test should be reduced from $150 to $50 to reflect a reasonable optional telephone expense given the fact that nearly all telecommunication expenses are now incorporated into the housing and utilities standard.

8. Line 31 of the Means Test should be increased from zero to $10 to reflect charitable contributions shown on *Schedule J*.

9. Line 34 of the Means Test should be reduced from $78 to zero because of the same reasons stated in paragraph 5 of this motion. Moreover, Debtors cannot contend the residence is necessary for their support when they have stated their intention to surrender the property.

10. The United States trustee completed a CMI and Means Test consistent with the changes in paragraphs 5 through 9 and it shows monthly disposable income of $603, causing the presumption of abuse to arise in Debtors' case. (See UST's Exhibit #1.)

**Debtors' Schedules and Statement of Financial Affairs**

11. Debtors' *Schedule I-Your Income* lists gross monthly income of $3,229 for Mr. Woodworth and $2,563 for Mrs. Woodworth. Mr. Woodworth's September 16, 2016 pay advice shows gross year-to-date income of $35,248 which equates to $4,146 monthly. The difference is due to the fact that Mr. Woodworth receives quarterly bonuses which he did not include in his income. Debtors' *Statement of Financial Affairs* reports 2015 gross wages of $48,670 for Mr. Woodworth which is an average of $4,055 – an amount more in line with his 2016 monthly earnings. S*chedule I* lists a $131 deduction from Mr. Woodworth's wages for mandatory contributions for retirement plans. *Schedule I* list $93 and $181 deductions from income for mandatory contributions for retirement plans and voluntary contributions for retirement plans, respectively. *Schedule* I list a $643 deduction from Mrs. Woodworth's income for insurance. Mr. & Mrs. Woodworth's pay advices do not reflect any mandatory deductions, and the monthly amount deducted from their pay advices for insurance and the health savings account contributions total $453.

12. Debtors' *Schedule J-Your Expenses* lists income after deductions of $3,701, monthly expenses of $4,065 and negative monthly net income of $364. *Schedule J* includes the $1,564 mortgage payment which they have not made in four months and will not make in the future. Debtors list $250 a month for medical and dental expenses but their pay advices show and *Schedule I* list deductions for contributions to a health savings account – funds which are used to pay such medical and dental expenses.

13. Debtors' Schedule *E/F-Creditors Who Have Unsecured Claims* lists $17,946 of non-priority claims. *Schedule D-Creditors Who Have Claims Secured by Property* lists claims of $167,462.

14. Debtors' Statement of Financial Affairs (SOFA) states that Debtors paid for credit counseling on July 25, 2016 and paid bankruptcy counsel on August 10, 2016.

### *Legal Authority*

**Dismissal under 11 U.S.C. § 707(b)(2)**

15. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 "BAPCPA") provides for the dismissal of a chapter 7 proceeding where there is a presumption of abuse. Specifically 11 U. S. C. § 707(b) provides:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee..., may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter...
>
> (2)(A)(I) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of
>
> > (I)   25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or
> >
> > (II)   $12,475.

If the presumption of abuse arises, it can only be rebutted by special circumstances, such as a serious medical condition or a call or order to active duty in the armed forces. 11 U.S.C. § 707(b)(2)(B)(I). *Eisen v. Thompson*, 370 B.R. 362 (N.D. Ohio 2007).

**Dismissal under 11 U.S.C. § 707(b)(3)(B)**

16. Section 707(b)(3) of the Bankruptcy Code provides authority for the dismissal of a case if the granting of a discharge would be an abuse. A motion may be filed under this subsection if the presumption of abuse does not arise or if the presumption is rebutted. Section 707(b)(3)(B) of the Bankruptcy Code is part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. This act ensures that debtors who can pay their creditors do pay their

5

creditors. *Ransom v. FIA Card Services, NA*, 131 S. Ct. 716 (2011). Under this statute, a chapter 7 bankruptcy filing should be a debtor's last resort. *In re Speith*, 427 B.R. 621, 626 (Bankr. N.D. Ohio 2009).

17. In considering a motion to dismiss filed under section 707(b)(3)(B) of the Bankruptcy Code, the Court should consider the totality of a debtor's circumstances. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). The ability to repay creditors from disposable income is the primary factor to be considered in any determination of abuse. *See, e.g. In re Jordan*, 428 B.R. 430, 433 (Bankr. N.D. Ohio 2010); *In re Brenneman,* 397 B.R. 866, 870-71 (N.D. Ohio 2008); *In re Matias,* 203 B.R. 490, 492 (Bankr. S.D. Fla. 1996). When debtors have disposable income that would cause the presumption to arise under section 707(b)(2), the Court may use this amount as a guideline when determining whether to dismiss a case under 11 U.S.C. § (707)(b)(3). *In re Mestemaker*, 359 B.R. 849, 858 (Bankr. N.D. Ohio 2007) (noting that the amount triggering abuse under 11 U.S.C. § 707(b)(2) may be useful as a guideline when analyzing a motion to dismiss under 11 U.S.C. § 707(b)(3)).

18. Another factor is whether expenses can be reduced without depriving debtors of any necessities. *In re Srikantia*, 417 B.R. 505, 509 (Bankr. N.D. Ohio 2009). Additionally, the Court may dismiss a case based upon the totality of circumstances even when there is no apparent ability to repay creditors. *In re Kunkelman*, 417 B.R. 489, 494 (Bankr. N.D. Ohio 2009) (a debtor with no amount or a marginal level of disposable income may still have their case dismissed for abuse under section 707(b)(3)(B) if the totality of the debtor's financial situation so warrants). Section 707(b)(3)(A) of the Bankruptcy Code provides for dismissal of a petition that was filed in bad faith.

*Application of § 707(b) to Debtor's Case*

**Means Test Review 707(b)(2)**

19. Dismissal of Debtors case is warranted under section 707(b)(2) of the Bankruptcy Code. The presumption of abuse arises and Debtors have not demonstrated special circumstances that would rebut the presumption of abuse and their case should be dismissed pursuant to section 707(b)(2).

**Totality of Circumstances Review - 707(b)(3)(B)**

**Income**

20. A debtor's ability to repay creditors may be the sole determinant of the issue of substantial abuse absent any mitigating factors. *In re Krohn,* 886 F.2d 123, 126 (6th Cir. 1989) (debtor's ability to pay, alone, may be sufficient to warrant dismissal). Moreover, the ability to repay creditors from disposable income is the primary factor to be considered in any determination of abuse. *See, e.g. In re Jordan*, 428 BR 430, 433 (Bankr. N.D. Ohio 2010); *In re Brenneman,* 397 B.R. 866, 870-71 (N.D. Ohio 2008); *In re Matias,* 203 B.R. 490, 492 (Bankr. S.D. Fla. 1996). Debtors' gross income wages exceed the median income for their household size by approximately $24,000. Debtors' show negative disposable income after the payment of necessary living expenses but that figure fails to take into consideration that Mr. Woodworth's income is understated by more than $900 due to the exclusion of his quarterly bonuses, the insurance deduction from income is overstated by $190, and some of the monthly expenses appear to be overstated. Debtors are also contributing to deferred compensation plans and repaying a deferred compensation plan loan.

### Deferred Compensation Contributions and Loan Payments

21. Collectively, Debtors are paying a total of approximately $405 a month for deferred compensation contributions and deferred compensation loan payments. Although Debtors characterize some of the payments as mandatory deductions, the pay advices do not show any such deductions. These are funds that could be used to repay creditors. Courts should consider retirement contributions and retirement loan payments when determining a debtor's ability to pay creditors. *In re Pandl*, 407 B.R. 299 (Bankr. S.D. Ohio 2009); *In re Felske*, 385 B.R. 649 (Bankr. Ohio 2008). The reasoning is that it would be unfair to permit debtors to commit part of their earnings to the enlargement of their own retirement fund while paying creditors less than a 100% dividend. *In re Croskey*, 385 B.R. 649, 656 (Bankr. N.D. Ohio 2007). Debtors have more than sufficient funds to make a meaningful payment to creditors once these amounts are added back into disposable income.

### Overstated Deductions (Schedule I) and Expenses (Schedule J)

22. Debtors list a $643 deduction from income for insurance but the pay advices show that amount to be $453, which includes health savings account contributions. Debtors' *Schedule J* lists $250 a month for medical and dental expense but *Schedule I* also deducts from income contributions to a health savings account. Since contributions to health savings accounts are used to pay for medical and dental expenses, Debtors cannot claim the $250 expense which is already covered by the contributions to the health savings account. There is a $190 overstatement of the deductions from income, and a $250 overstatement of the health expense because it is covered by the contributions to the health savings account.

### Debtors' Case Should Be Dismissed

23. This is the type of case that BAPCPA was intended to address. Debtors' current income exceeds the median income for their household size by more than $24,000 and they can

afford to pay creditors something. One purpose of the BAPCPA is to ensure that debtors who can pay their creditors do pay their creditors. *Ransom v. FIA Card Services, NA*, 131 S. Ct. 716 (2011). Bankruptcy is not conditioned upon living in poverty but does envision a sacrifice on the part of a debtor. *In re Felske*, 358 B.R. 649, 656 (Bankr. N.D. Ohio 2008). When you consider Mr. Woodworth's understatement of income and the overstated deductions and expenses, Debtors have more than sufficient disposable income to make a meaningful payment to creditors.

24. Debtors are gainfully employed, they are eligible for a chapter 13 case, they have stable sources of income and payments can be made to unsecured creditors without depriving their household of necessary living expenses. Debtors should make an effort to repay creditors and a chapter 7 bankruptcy filing should be their last resort. *In re Speith*, 427 B.R. 621, 626 (Bankr. N.D. Ohio 2009).

**WHEREFORE,** the United States trustee respectfully requests this Court to enter an order dismissing Debtors' case pursuant to 11 U.S.C. § 707(b)(2) and/or 11 U.S.C. § 707(b)(3) and for such further relief as may be appropriate.

Respectfully Submitted,

Daniel M. McDermott
United States Trustee, Region 9

by: */s/Derrick V. Rippy*
Derrick V. Rippy (0044069)
U.S. Department of Justice
Office of the U.S. Trustee
H.M. Metzenbaum U.S. Courthouse
201 E. Superior Ave., Ste. 441
Cleveland, Ohio 44114-1240
(216) 522-7800, ext. 232
(216) 522-7193 Facsimile
Derrick.V.Rippy@usdoj.gov

**Certificate of Service**

I, Derrick V. Rippy, certify that on December 20, 2016, a true and correct copy of the **Motion of the United States Trustee to Dismiss for Abuse Pursuant to 11 U.S.C. §§ 707(b)(1), (b)(2) & (b)(3)** was served:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

Heather L. Moseman on behalf of Dennis & Victoria Woodworth, Debtors at heather@mosemanlaw.com

And by regular U.S. Mail, postage prepaid, on:

Dennis & Victoria Woodworth
223 East Parkway Drive
Madison, OH 44057

/s/Derrick V. Rippy
Derrick V. Rippy
Trial Attorney
U.S. Department of Justice
Office of the U.S. Trustee
H. M. Metzenbaum U.S. Courthouse
201 Superior Avenue, Suite 441
Cleveland, Ohio 44114-1240
216/522-7800 Ext. 232
216/ 522-7193 Facsimile
Derrick.V.Rippy@usdoj.gov